Dale CARTER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 64A03–9308–CR–267.

Court of Appeals of Indiana,
Third District.

April 13, 1994.

John E. Martin, Law Offices of James V. Tsoutsouris, Valparaiso, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

GARRARD, Judge.

Dale Carter appeals his conviction for Attempted Robbery, a class C Felony.

FACTS AND PROCEDURAL HISTORY:

On October 26, 1991, Dale Carter (Carter) attended a Halloween party hosted by John Henderson in Porter County, Indiana. Around 11:00 p.m., after consuming an unknown amount of alcohol, Carter and a

friend, Matt Pera (Pera), walked to a nearby Clark Mart to purchase cigarettes.

Carter and Pera entered the food mart and Carter approached the cashier, Steve Cowsert (Cowsert). Carter ordered Cowsert to give him all of the money in the cash register. If he didn't comply, Carter threatened to "put a bullet" in his head. Cowsert, however, refused and activated a silent alarm system. Carter became angry and stated that Pera had a bomb and would blow up the store. Cowsert again refused. Carter then reached over the counter, grabbed Cowsert by the shirt and demanded money. This time Cowsert indicated that he would give him the money. Instead, however, Cowsert reached behind the counter and pulled out a can of mace. After being sprayed with mace, Carter screamed and tried to escape. Cowsert, however, was able to grab Carter, wrestle him to the ground and detain him until the police arrived. While on the ground Carter yelled: "I give up. I give up. Let me go, I can't breathe, I give up." Meanwhile, Carter's friend Pera fled the store.

When the police arrived, the officer found Carter writhing in pain on the floor. He demanded medical attention and refused to comply with the officer's directives. The officer was, however, eventually able to handcuff Carter.

On November 1, 1991, Carter was charged with Attempted Robbery, a class C felony. A jury trial commenced on March 15, 1993, and on March 17, 1993, the jury found Carter guilty as charged. The trial court sentenced Carter to four years imprisonment. Because this offense was committed while Carter was on probation for previous offenses, the trial court added an additional four years for aggravating circumstances. The court then suspended two years of Carter's sentence and placed him on two years formal probation upon release.

Carter brings two issues before us on appeal:

(1) Whether the trial court abused its discretion in denying Carter's mid-trial motion for continuance in order to allow Carter an opportunity to prepare expert testimony on surrebuttal.

(2) Whether there was sufficient evidence to sustain Carter's conviction for Attempted Robbery.

DISCUSSION:

■ Carter first contends that the trial court erred in denying his mid-trial motion for continuance in order to allow Carter an opportunity to prepare expert testimony on surrebuttal.[1] We disagree.

In this case, Carter raised the defense of voluntary intoxication. The evidence discloses that, prior to the incident at Clark Mart, Carter had been drinking and that he may have ingested the drug Prozac along with alcohol. Carter sought to use this information to suggest that this combination of drugs affected him in such a way that he could not have formed the requisite criminal intent to commit Attempted Robbery. To rebut the contention that Prozac somehow added to Carter's intoxication level, the State presented an expert witness, Dr. Michael Caplis, a biochemist/toxicologist. Dr. Caplis testified as to the effect of Prozac on a person who had consumed alcoholic beverages. The relevant portion of his testimony reads as follows:

Q How would Prozac react or interact with an intoxicated individual?

A In that respect it would do the same thing.

Q Could you—would the Prozac increase or compound the effects of intoxication?

A Studies have not shown Prozac in single or multiple doses to have effects upon alcohol intoxication.

---

**1.** Carter also contends that the trial court erred in allowing the State's expert witness, Dr. Caplis, to testify. Carter was apparently not given notice that Dr. Caplis would testify until the State filed its third and final list of witnesses on March 12, 1993, three days before trial and three days after the final pre-trial conference. Carter contends that the State purposefully disregarded the trial court's deadline for submitting a final witness list and thereby placed him at a substantial disadvantage in finding an expert witness on surrebuttal. The record, however, shows no attempt by Carter to object to Dr. Caplis as a rebuttal witness either when the list was provided or at trial when he actually testified. He has therefore waived this issue for appeal.

Q Could you further elaborate and explain that?

A Well, there have been studies done that in animals and in humans which some people believe caused reduced alcohol consumption but there [have] not been any studies systematically done that show that the taking of Prozac singularly or [in] multiple doses with alcohol causes a potentiation or and increased effect of either the alcohol or the Prozac.

Following this testimony, Carter requested a continuance to prepare surrebuttal evidence. Carter planned to speak with several physicians in order to gather evidence with which to impeach the testimony given by Dr. Caplis. The State opposed Carter's motion, stating that, since Carter was the one who raised the question of the effect of Prozac, he should have been prepared to offer expert testimony on direct examination. He cannot now claim prejudice from his failure to prepare for an issue that he himself raised. The trial judge apparently agreed and denied Carter's motion. Carter appeals this denial.

■ As a general rule, motions for continuance are within the sound discretion of the trial court. *Vaughn v. State* (1992), Ind., 590 N.E.2d 134, 135.[2] In ruling upon such a motion, "the trial court should give heed to the diverse interests of the opponent of the motion which would be adversely impacted by altering the schedule of events as requested in the motion, and give heed as well to the diverse interests of the movant beneficially impacted by altering the schedule." *Id.* In addition, the later the motion, the more detrimental for the movant. *See Id.* at 136. On appeal, the ruling of the trial court is given considerable deference and reviewed only for an abuse of discretion. *Id.* A reversal must contain, as its basis, a determination of resulting prejudice. *Id.*

In this case, the State offered the testimony of Dr. Caplis to rebut that portion of Carter's defense that implied a heightened

intoxication from the ingestion of Prozac. Carter requested a continuance to prepare evidence to rebut Dr. Caplis' testimony. This was, however, Carter's own theory. We find it difficult to believe that Carter did not have time to investigate his own theory in time for trial. While he may not have thought it necessary to procure an expert, that was a strategy he chose to employ and it was not an abuse of discretion for the trial court to conclude that a last minute search for an expert, or other similar testimony, to impeach a predictable rebuttal was not warranted in this case.

We also note that this request came mid-trial, a very late moment in this action. The lateness of the motion is detrimental to the defense, *id.*, and Carter has offered no showing to mitigate this factor. For example, there was no suggestion that this kind of evidence was not available before trial and Carter certainly cannot claim surprise in learning that the State would put on testimony to rebut his defense. Carter has also failed to demonstrate how the relative importance of presenting impeachment evidence on surrebuttal outweighed the burden of interrupting a jury trial already in progress. Again, we see no abuse on the part of the trial court in denying Carter's motion for continuance in this case.

■ Next, Carter challenges the sufficiency of the evidence to sustain his conviction for Attempted Robbery. He again focuses on intent, alleging that he was so intoxicated on the night in question that he was unable to form the requisite intent needed to commit the crime. An intoxication defense, however, if applicable, will not prevail if the evidence shows that the defendant had the ability to perform tasks, such as attempting to hide his crime, give instructions to others, or take himself from place to place immediately following the crime. *Montgomery v. State* (1988), Ind., 521 N.E.2d 1306, 1308,

2. An exception to this rule is well settled in Indiana. Where a defense motion is made for a continuance because of the absence of a material witness or other material evidence, and where that motion satisfies the special statutory criteria for such motions established in IC 35–36–7–1,

and, finally, where "the prosecuting attorney refuses to admit that the absent witness would testify as alleged, or that the absent evidence exists in the form alleged," then the motion should be granted. *Vaughn,* 590 N.E.2d at 135. This is not the case in this action.

*cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988).

■ In reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of witnesses. *Johnson v. State* (1992), Ind., 593 N.E.2d 208, 209. We look only to the evidence and all reasonable inferences which support the finding. *Id.* If we find substantial evidence of probative value from which the fact finder could conclude guilt beyond a reasonable doubt, we must affirm. *Id.*

In this case, the evidence reveals that Carter had been drinking and may have taken Prozac. Carter nevertheless approached the cashier at the Clark Mart on the night in question, demanded money from him, and threatened to kill him. After he attempted the robbery, Carter had the presence of mind to try to flee the store. Although the cashier, Cowsert, testified that Carter had difficulty finding the right door, he attributed that difficulty to the mace, not Carter's state of intoxication. In addition, Carter, when later detained by the police, repeatedly demanded medical attention. When he was treated by an emergency medical technician, the technician described Carter as very verbal, with unslurred speech. Carter told the technician: "I really f***** up this time, didn't I?" This and other evidence presented to the jury is sufficient to demonstrate that Carter's level of intoxication was not so severe as to prevent him from forming the criminal intent required to commit the crime. *Street v. State* (1991), Ind., 567 N.E.2d 102, 104. The evidence is sufficient to sustain the jury's determination that Carter committed Attempted Robbery.

For the foregoing reasons, the judgment of the trial court is affirmed.

STATON and NAJAM, JJ., concur.