**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DAVID BECSEY**
Zeigler Cohen & Koch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Oct 10 2014, 9:51 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ALEXIS CAMERON,                                  )
                                                 )
    Appellant-Defendant,                         )
                                                 )
        vs.                              )    No. 49A02-1403-CR-176
                                                 )
STATE OF INDIANA,                                )
                                                 )
    Appellee-Plaintiff.                          )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Helen Marchal, Judge
Cause No. 49G16-1311-FD-76083

**October 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Alexis Cameron appeals his conviction for class D felony domestic battery, arguing that the prosecutor committed fundamental error by violating his Fifth Amendment privilege against self-incrimination. We conclude that the prosecutor's questions and comments were an appropriate response to defense counsel's questions and argument. Finding no error, let alone fundamental error, we affirm.

## Facts and Procedural History

Cameron lived with Shirley Carson and her four children in Indianapolis. Cameron and Carson had dated for two years and had lived together eight or nine months, sharing expenses and child care responsibilities. One evening, Cameron woke up Carson and asked her for ten dollars. She refused, and he became angry. He yelled and screamed at her. He spat on her, and she realized that he had been drinking. He stepped on her bare feet, twisting his shoe into her skin, which hurt. He scratched her on the face and chest, causing her pain. Carson suffered a bloody scratch on her chest several inches long. Carson tried to push Cameron away, sustaining a bruise to her finger and an injury to her left arm. Carson's oldest daughter, A.A., witnessed the fighting and called 911.

Carson yelled at Cameron to leave, and he went to the door and opened it. Carson pushed him out the door and locked it. Cameron kicked the door in and reentered. He continued yelling and began throwing things, including a DVD player, a humidifier, and an iron. He went to the kitchen and poured a drink. When police lights became visible from inside the house, he threw his drink at Carson. He also threw a chair toward a couch where

2

Carson's two-year-old daughter was sitting. The chair put a hole in the wall and broke. Carson ran out the back door before police arrived.

Indianapolis Metropolitan Police Officer Ericka Daniels arrived at the scene. Carson explained what happened, and police took pictures of her injuries and the damage to the house. After the police left, Cameron returned. He eventually went to sleep, and A.A. called 911 again. Officer Daniels returned and arrested Cameron. She did not notice any injuries to Cameron, and he did not indicate that he had any. The State charged Cameron with class D felony domestic battery of Carson, class D felony battery of a family or household member (Carson), and class A misdemeanor battery of A.A.

At trial, Carson, A.A., and Officer Daniels testified. During cross-examination of Carson, defense counsel asked her whether she stabbed Cameron that night. The State objected on the grounds of relevancy and prejudice. The trial court overruled the objection, and Carson testified that she did not stab Cameron. Defense counsel asked her whether she had a knife that night, saw a knife at her house, or hid a knife. To each question, she answered, "No I didn't." Tr. at 84. Defense counsel introduced two photographs: Exhibit D, a photograph of a knife handle sticking out of a floor vent; and Exhibit E, a photograph of the tip of a knife blade sticking out from under A.A.'s mattress. The trial court admitted the exhibits over the State's objection.

During direct examination, A.A. testified that she kept a knife under her mattress because she felt unsafe at home, that neither she nor her mother wielded a knife that night,

3

and that Cameron did not get stabbed. On cross-examination, A.A. testified that she never saw Cameron get stabbed or saw him bleeding.

Officer Daniels testified last. The prosecutor asked her whether she saw any marks on Cameron that night, whether he mentioned any injuries, and whether she saw any blood on him, to which she responded negatively. The prosecutor also questioned her as follows:

Q: When you went in to arrest [Cameron] did he say anything to you?
A: No.
Q: *He didn't say anything to you? He didn't complain of any injuries?*
A: No.
Q: You didn't visibly see anything?
A: No.

*Id*. at 164-65 (emphasis added).

During cross-examination, defense counsel questioned Officer Daniels as follows:

Q: You didn't ask [Cameron] what happened?
A: I did.
Q: You did? Earlier on the record you didn't say you asked him. I believe, you said he didn't say anything.
A: He didn't say anything after I asked him.

*Id*. at 166.

On redirect, the following exchange occurred:

Q: And the first time you came you did speak to the people that were there?
A: Yes.
Q: Ms. Carson.
A: Yes.
Q: Shirley Carson.
A: Yes.
Q: And [A.A.]?
A: Yes.
Q: You didn't speak to [Cameron]?
A: Correct.

4

Q:    Because he wasn't there, correct?
A:    Correct.
Q:    And then the second time you came you did ask him if there was any injuries.
A:    Yes.
Q:    And you did ask him for his side of the story?
A:    Yes.
Q:    *And he didn't say anything?*
A:    No.

*Id*. at 173-74 (emphasis added).

In closing argument, the prosecutor explained the elements of each offense and argued that the evidence proved each element. The prosecutor did not mention Officer Daniels's questioning of Cameron on the night of the arrest nor his response. During the defense's closing argument, counsel contended that Carson lied about Cameron kicking in the door. He then asserted, "Now why would she lie, 'cause she stabbed him." *Id*. at 191. The prosecutor objected that this was a mischaracterization of the evidence. The trial court overruled the objection and said that it would remind the jury that it was just argument. Defense counsel continued, "The problem is you don't have all the evidence. We talked about the officer's investigation. The officer said before she even saw [Cameron], before she even talked to him, before she even got a chance[,] she made arrangements to arrest him when she saw him." *Id*. at 192. After acknowledging that Carson had visible wounds, defense counsel stated, "There weren't any photos of my client though, no photos were taken of him to show [that] he had wounds, prove he didn't have wounds. Alex, stand up show 'em you[r] knife wound." *Id*. at 197. The State objected. The trial court sustained the

5

objection and stated that it would instruct the jury not to consider that part of defense counsel's argument. The State moved for mistrial, which the trial court denied.

In rebuttal, the prosecutor stated,

> There has been no evidence whatsoever that has come out that [the] defendant was stabbed that night. Not by [A.A.], not by Shirley Carson, defiantly [sic] not by Officer Daniels, nobody was stabbed that night. If he was stabbed why isn't he shouting in the open 9-1-1 line, hey I've been stabbed, someone help me, someone help me! But he wasn't[,] nobody said anything. *If he was stabbed why didn't he tell Officer Daniels when Officer Daniels asked him*."

*Id*. at 203 (emphasis added). Defense counsel objected on the basis that the last statement violated Cameron's right to remain silent, which the trial court overruled. The prosecutor also told the jury, "Officer Daniels said that she tries to take both sides of the story[,] *he didn't give her a side of the story that night*. … I'm asking you to go back there and use your life experiences, use your common sense, *think about [what] was given to you today, think about what the testimony said, think about the evidence that you've seen and heard*." *Id*. at 204 (emphases added).

The jury found Cameron guilty of the class D felony batteries and not guilty of class A misdemeanor battery. The trial court entered judgment of conviction for domestic battery. Cameron appeals.

**Discussion and Decision**

Cameron argues that during questioning and closing argument, the prosecutor violated his right against self-incrimination by commenting on his post-arrest, pre-*Miranda* silence and his failure to testify. Cameron concedes that he did not move for an admonishment or request a mistrial and therefore did not properly preserve his claim. *See Cooper v. State*, 854

6

N.E.2d 831, 835 (Ind. 2006) (stating that to properly preserve prosecutorial misconduct claim for appeal, defendant must raise contemporaneous objection and request admonishment, and if admonishment is not given or is insufficient to cure error, then defendant must request mistrial). To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error. *Id.* In reviewing a claim of prosecutorial misconduct, we "determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Coleman v. State*, 750 N.E.2d 370, 374 (Ind. 2001). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Cooper*, 854 N.E.2d at 835. For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

The Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." This privilege extends to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 8 (1964). The Fifth Amendment prohibits the prosecution from commenting on a defendant's decision not to testify at trial. *Griffin v. California*, 380 U.S. 609, 615 (1965). However, we reject

7

Cameron's contention that any of the prosecutor's comments were directed toward his failure to testify. Rather, the questions and argument of which Cameron complains relate to his post-arrest, pre-*Miranda* silence. "Whether a defendant's post-arrest, pre-*Miranda* silence may be used substantively has yet to be addressed by the United States Supreme Court, but Indiana courts have held post-arrest, pre-*Miranda* silence cannot be used as substantive evidence in the State's case-in-chief."[1] *Peters v. State*, 959 N.E.2d 347, 353 (Ind. Ct. App. 2011).

We need not address whether Cameron's post-arrest, pre-*Miranda* silence is protected by the Fifth Amendment because even if the prosecutor's questions and comments could be considered a violation of Cameron's right against self-incrimination, Cameron opened the door to those questions and comments. We observe that "otherwise inadmissible evidence may become admissible where the defendant 'opens the door' to questioning on that evidence." *Ludack v. State*, 967 N.E.2d 41, 45 (Ind. Ct. App. 2012), *trans. denied*. "'In order to open the door, the evidence relied upon must leave the trier of fact with a false or misleading impression of the facts related.'" *Id*. at 46 (quoting *Bryant v. State*, 802 N.E.2d 486, 500 (Ind. Ct. App. 2004), *trans. denied*). "The State may introduce evidence that might otherwise be a violation of the defendant's Fifth Amendment right against self-incrimination if the State's evidence is a fair response to evidence elicited by the defendant." *Id*.

---

[1] In *Salinas v. Texas*, 133 S. Ct. 2174, 2178-79 (2013), the U.S. Supreme Court held that a defendant's pre-arrest, pre-*Miranda* silence was not protected by the Fifth Amendment because the defendant had not asserted his privilege against self-incrimination.

Here, defense counsel introduced the allegation that Carson stabbed Cameron. The photographs showed that there were knives in Carson's house, but there was no evidence that Cameron was stabbed. In response to defense counsel's questions, the prosecutor attempted to show the jury that Officer Daniels had not received any indication from Cameron that he was injured by asking her whether he had said anything to her about it. On cross-examination, defense counsel asked Officer Daniels whether she had asked Cameron what happened. This question opened the door to the prosecutor to question Officer Daniels on redirect as to whether she asked for Cameron's side of the story.

As for closing arguments, the prosecutor initially said nothing about Cameron's post-arrest, pre-*Miranda* silence. Defense counsel again raised the allegation that Carson stabbed Cameron and argued that no photographs had been taken of Cameron to show whether he had wounds. These comments opened the door to the prosecutor's statement that Cameron did not say anything to Officer Daniels about being wounded. We conclude that the prosecutor's questions and remarks were an appropriate response to defense counsel's questions and remarks, and thus no error occurred. *See id*. at 46-47 (concluding that defense counsel's questions to detective regarding interview with defendant opened door to prosecutor to ask questions regarding scope of interview). Therefore, we affirm Cameron's conviction.

Affirmed.

RILEY, J., and MATHIAS, J., concur.