## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 24 2020, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Office of Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shonika Vashae Drones, *Appellant-Defendant,* | January 24, 2020 |
| | Court of Appeals Case No. 19A-CR-1442 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Salvador Vasquez, Judge |
| | Trial Court Cause No. 45G01-1711-F2-16 |

**Bradford, Chief Judge.**

# Case Summary

[1] In November of 2017, Shonika Vashae Drones, along with her mother, husband, friend, and two sons M.H. and S.H., drove to Samual Hammel, Jr.'s, residence, who is her sons' biological father. As they neared Hammel's residence, the boys took a baseball bat and stated that they were going inside Hammel's residence to take some money. Once inside the residence, a fight ensued between Hammel and the boys, which resulted in S.H. being shot. The State charged Drones with Level 2 felony attempted robbery resulting in serious bodily injury, Level 3 felony attempted armed robbery, and Class A misdemeanor false informing. In April of 2019, a jury trial was held, at the conclusion of which Drones was found guilty as charged. Drones contends that the trial court erred by denying her motion for continuance and allowing certain testimony at trial. We affirm.

# Facts and Procedural History

[2] Between 2000 and 2001, Drones and Hammel were in a relationship that produced two children, M.H. and S.H. After living with a foster parent for approximately fifteen years, M.H. and S.H. began living with Hammel in 2017. M.H. and S.H.'s foster parent gave Hammel $1000.00 in late 2017, in order to support the boys. On November 27, 2017, M.H. and S.H. decided to move in with Drones and arrangements were made for the boys' belongings to be retrieved, but Hammel made it known to Drones that the boys were no longer welcome at his residence. Nevertheless, M.H. and S.H. traveled in a vehicle

with Drones, Drones's husband, mother, and friend to collect the boys' belonging from Hammel's residence.

[3] As the group traveled to Hammel's residence, M.H. and S.H. told Drones that they would enter the residence through a window Hammel kept open. Once inside, the boys planned to take the remaining money given to Hammel from the boys' foster parent. Upon arriving, the boys took a baseball bat that Drones kept in her vehicle. Drones later admitted during a police interview that she knew that M.H. and S.H. intended to sneak into Hammel's residence to steal the money. After arriving at Hammel's residence, Drones and her husband waited in the vehicle while her mother, friend, and Hammel carried the boys' clothes from the residence to the vehicle. After helping carry clothes to the vehicle, Hammel returned to his residence and observed M.H. and S.H. standing inside, with M.H. holding the baseball bat. Hammel, believing that M.H. was about to hit him with the bat, charged the boys in order to gain control of the bat. A scuffle ensued, with S.H. putting Hammel in a "bear hug," causing the three to fall over a couch. Tr. Vol. II p. 182. As they fell, Hammel saw M.H. pull a gun out of his pocket and heard it fire. S.H. stated that he had been hit by the bullet, and the boys fled the residence. Hammel later observed that a "bag of change" was missing from his residence, which he had last seen prior to moving the boys' clothes out of his residence. Tr. Vol. II p. 183. During the course of the investigation into the incident, Drones made false statements to the police.

[4]     On November 30, 2017, the State charged Drones with Level 2 felony attempted robbery resulting in serious bodily injury, Level 3 felony attempted armed robbery, and Class A misdemeanor false informing. A jury trial was held on April 22 through April 24, 2019. At trial, Drones, through counsel, moved for a continuance after the State informed counsel that it discovered eight photographs of the crime scene and a bullet fragment, which motion was denied by the trial court. Drones also objected to various testimony given by East Chicago Police Department Detective Isaac Washington regarding Drones's police interview and Detective Washington's charging decisions, which were overruled by the trial court. At the conclusion of the trial, Drones was found guilty as charged. On May 23, 2019, the trial court entered judgments of conviction for Level 2 felony attempted robbery resulting in serious bodily injury and Class A misdemeanor false informing and sentenced Drones to an aggregate sentence of ten years of incarceration with five suspended to probation.

# Discussion and Decision

[5]     Drones contends that the trial court abused its discretion by (1) denying her motion for continuance after the State produced eight photographs of a bullet fragment found in the wall of Hammel's residence and the bullet fragment itself, (2) allowing Detective Washington to testify about the non-recorded portion of her first police interview pursuant to Indiana Evidence Rule 617(a)(3), and (3)

admitting Detective Washington's testimony in alleged violation of Indiana Evidence Rule 704.

# I. Motion for Continuance

Because the State produced eight photographs regarding a bullet fragment found in the wall of Hammel's residence and the bullet fragment itself for the first time at the beginning of the trial, Drones contends that the trial court abused its discretion by denying her motion for continuance.

> As a general rule, motions for continuance are within the sound discretion of the trial court. In ruling upon such a motion, the trial court should give heed to the diverse interests of the opponent of the motion which would be adversely impacted by altering the schedule of events as requested in the motion, and give heed as well to the diverse interests of the movant beneficially impacted by altering the schedule. In addition, the later the motion, the more determinantal for the movant. On appeal, the ruling of the trial court is given considerable deference and reviewed only for an abuse of discretion. A reversal must contain, as its basis, a determination of resulting prejudice.

*Carter v. State*, 632 N.E.2d 757, 760 (Ind. Ct. App. 1994).

Drones moved to continue because she wanted to determine which officer's hand was holding the spent bullet in the photograph, why the bullet was never listed in discovery, and whether DNA could be found on the bullet that would link it to Hammel, which could then be used to impeach his testimony that M.H. fired the gun. The trial court denied Drones's motion, concluding that it

has "never seen an instance where DNA can be extracted from a bullet that's been … recovered from a wall," Tr. Vol. II p. 164, and permitted Drones to conduct *voir dire* on Detective Washington during the State's direct examination and later cross-examine Detective Washington regarding the photographs and bullet. While we stress that turning over discovery on the first day of trial is usually poor practice, we conclude that the trial court's decision in this case was reasonable and that it therefore acted within its discretion. Further, the ultimate identity of the individual who fired the gun is irrelevant in this matter. In order to convict Drones of attempted robbery resulting in serious bodily injury, the State was required to establish that M.H. knowingly or intentionally attempted to take property from Hammel using or threatening the use of force, which resulted in bodily injury to any person other than M.H. Ind. Code § 35-42-5-1. The record clearly indicates that Drones and her boyfriend transported M.H. and S.H. to Hammel's residence knowing that the boys intended to steal money from him, and as a result of the attempted robbery, S.H. was shot. Drones has failed to establish that the denial of her motion resulted in prejudice.

## II. Detective Washington's Testimony

[8] Drones contends that the trial court abused its discretion by admitting certain testimony from Detective Washington at trial. "The evidentiary rulings of a trial court are afforded great deference and are reversed on appeal only upon a showing of an abuse of discretion." *Udarbe v. State*, 749 N.E.2d 562, 563 (Ind. Ct. App. 2001). "An abuse of discretion occurs if a trial court's decision is

clearly against the logic and effect of the facts and circumstances before the court." *Baker v. State*, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013).

## A. Indiana Evidence Rule 617

Drones contends that the trial court abused its discretion by allowing Detective Washington to testify about the statements Drones made during the first police interview pursuant to Indiana Evidence Rule 617(a)(3). Indiana Evidence Rule 617 provides that

> (a) In a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved, and is available at trial, expect upon clear and convincing proof of any one of the following:
>
> [ … ]
>
> (3) The law enforcement officers conducting the Custodial Interrogation in good faith failed to make an Electronic Recording because the officers inadvertently failed to operate the recording equipment properly, or without the knowledge of any of said officers the recording equipment malfunctioned or stopped operating[.]

Here, Detective Washington conducted a custodial interrogation believing that the audio-visual recording equipment was recording. Detective Washington testified that while preparing for trial he discovered that the equipment had malfunctioned, failing to record a majority of the interview, and had no idea why the equipment malfunctioned. The trial court found this to be credible and

concluded that this met the exception under Indiana Rule of Evidence 617(a)(3) and allowed Detective Washington to testify about the statements Drones made during the interview. This initial determination was for the trial court to make and we will not second-guess it. *See* Indiana Evidence Rule 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."). We therefore conclude that the trial court did not abuse its discretion in this regard.

[11] Drones also contends that the trial court abused its discretion by denying her request to conduct *voir dire* on Detective Washington regarding when he learned the equipment malfunctioned and the source of the malfunction. Given Detective Washington's testimony during the State's direct examination, we conclude that any error in denying Drones the opportunity to conduct *voir dire* can only be considered harmless. *See Durden v State*, 99 N.E.3d 645, 652, (Ind. 2018) ("An error is harmless when it results in no prejudice to the substantial rights of a party.") (internal citations and quotations omitted). Detective Washington testified that he discovered that the equipment had malfunctioned while preparing for trial and did not know the cause of the malfunction. Any further clarification to this testimony could have been sought by Drones on cross-examination, and by failing to do so the objection is waived.

# B. Indiana Evidence Rule 704

[12]     At trial, the State questioned Detective Washington regarding his charging decisions. Because said testimony given by Detective Washington allegedly violates Indiana Evidence Rule 704, Drones contends that the trial court abused its discretion in admitting said testimony. Indiana Evidence Rule 704 provides that

> (a) In General—Not Automatically Objectionable. Testimony in the form of an opinion or inference otherwise admissible is not objectionable just because it embraces an ultimate issue.

> (b) Exception. Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

The testimony relevant to Drones's contention is as follows:

> [MR. ROODA:] Detective, a lot of questions were asked of you on cross-examination about who shot who, about hiding a firearm, about who was the shooter; and Detective, in your filing of charges, actually, in this charge that we're here for this week, does it matter whether [Hammel] shot the son, the third, or if [M.H.] shot his father?

> MR. CANTRELL: Objection. It calls for legal conclusion.

> MR. ROODA: It doesn't call for legal conclusion. He was asked all about it.

> THE COURT: I disagree. As phrased. Overruled.

> [DETECTIVE WASHINGTON:] Repeat the question.

[MR. ROODA:] Does it matter who shot who inside that residence for these charges?

[DETECTIVE WASHINGTON:] Yes.

[MR. ROODA:] How?

[DETECTIVE WASHINGTON:] Because whoever shot would have been charged -- whoever did the shooting would have been charged.

[MR. ROODA:] Okay. So when two individuals go into a house, one armed with a baseball bat with the intention to take money, does it matter what happens after that?

MR. CANTRELL: Objection. Calls for speculation. Hypothetical question.

MR. ROODA: He asked all kind of hypothetical questions on cross-examination, your Honor. I'm just trying to follow up.

THE COURT: All right. Overruled.

[MR. ROODA:] So I will ask again. Two individuals go into residence, one armed with a baseball bat and you know the intention is to take money from the person inside. Does it matter what happens once inside?

[DETECTIVE WASHINGTON:] No.

[MR. ROODA:] Can you still charge those people in this hypothetical question with rob -- attempted robbery?

[DETECTIVE WASHINGTON:] Yes.

[MR. ROODA:] Okay. So specifically this case, you observed surveillance video showing the two sons of [Hammel] approaching his house, one armed with a baseball bat, correct?

[DETECTIVE WASHINGTON:] Yes.

[MR. ROODA:] That's consistent with what [Hammel] told you happened once he was inside, correct?

[DETECTIVE WASHINGTON:] Yes.

[MR. ROODA:] So at that point, would it have changed your analysis and what your charges of [Drones], whether [Hammel] shot his son or if [M.H.] shot his other -- his brother on accident?

[DETECTIVE WASHINGTON:] No.

Tr. Vol. III pp. 220–22.

[13] While ordinarily testimony regarding charging decisions is irrelevant evidence in a criminal case, Drones cross-examined Detective Washington about his charging decisions which opened the door to the State's questions regarding charging decisions on redirect examination. *See Cameron v. State*, 22 N.E.3d 588, 593 (Ind. Ct. App. 2014) (noting that "otherwise inadmissible evidence may become admissible where the defendant opens the door to questioning on that evidence.") (internal quotations omitted). Moreover, the trial court instructed the jury that "[t]he fact that a charge has been filed, the defendant arrested and brought to trial is not to be considered by you as any evidence of guilt." Appellant's App. Vol. II p. 57. *See Peterson v. State*, 699 N.E.2d 701, 705 (Ind. Ct. App. 1998) (noting that a trial court's jury instructions presumptively cure any improper statements made during trial). Drones has failed to establish that the trial court abused its discretion in this regard.

[14] The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.