

**FILED**

Feb 22 2017, 6:26 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ana M. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas E. Stettler,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 22, 2017<br><br>Court of Appeals Case No.<br>18A04-1607-CR-1638<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Linda Ralu Wolf, Judge<br><br>Trial Court Cause No.<br>18C03-1212-FB-52 |

**Bailey, Judge.**

# Case Summary

After a jury trial, Thomas E. Stettler ("Stettler") was convicted of Child Molesting, as a Class B felony.[1]  He now appeals.

We affirm.

# Issues

Stettler raises two issues for our review, which we restate as:

I.  Whether the trial court abused its discretion in admitting testimony of Stettler's victim concerning his prior conduct toward her under Ind. Evidence Rule 404(b); and

II.  Whether the State engaged in prosecutorial misconduct in closing argument rising to the level of fundamental error.

# Facts and Procedural History

In 2012, Stettler, then eighteen years old, lived in a house in Muncie with his mother, his fiancée, and their infant son.  In prior years, Stettler and his mother had shared a house with numerous relatives, including S.Y.; S.Y.'s sister, C.Y.; and their mother.

---

[1] Ind. Code § 35-42-4-3(a). Indiana's criminal statutes underwent substantial revision in 2013; we refer throughout our opinion to the statutes in effect at the time of Stettler's offense.

[5] On the evening of Friday, October 26, 2012, Stettler's mother invited S.Y., then twelve years old, and C.Y. to visit and to go with the family to a Halloween-themed corn maze. Because of some prior interactions with Stettler, S.Y. was somewhat hesitant to go, but eventually S.Y. and C.Y. went to Stettler's home.

[6] On either that Friday or the following Saturday, the group went to the corn maze. They left the maze late in the evening, and S.Y. and C.Y. decided to sleep on the couch at Stettler's home. The two laid down side by side, each with her head at an opposite end of the couch, with S.Y. lying closer to the front edge of the couch.

[7] At some point during the night, Stettler left the room he shared with his fiancée and child, and came into the living room where S.Y. and C.Y. were sleeping. After briefly standing over the couch and looking at S.Y., Stettler sat down in a chair immediately next to the couch. Stettler then pulled down S.Y.'s pants and put his penis into S.Y.'s "butt." (Tr. Vol. 2 at 89.) He also moved S.Y. and put his penis into her mouth. S.Y. pretended to be asleep during this, and Stettler stopped when S.Y. moved.

[8] C.Y. had awoken briefly during the night and had seen Stettler come into the living room and look down at S.Y., but went back to sleep soon afterward. After the girls returned home on the following Sunday, S.Y. told C.Y. about what had happened that Friday. S.Y. then told her mother that she did not want to go back to Stettler's house. When S.Y.'s mother asked why, S.Y. "told her that [Stettler] was raping me." (Tr. Vol. 2 at 94.)

[9] A police investigation ensued. Police interviewed Stettler and, subsequent to the interview, arrested him.

[10] On December 7, 2012, the State charged Stettler with Child Molesting. On August 29, 2014, the State filed its notice of intent to introduce evidence under Evidence Rule 404(b). The cause was set for a jury trial and, after numerous continuances, a jury trial was conducted from May 23 to May 25, 2016. During the trial, Stettler objected to testimony from S.Y. concerning prior alleged sexual conduct on Stettler's part, and the trial court admitted the evidence over his objection. In addition, at one point during closing argument, Stettler objected to a statement made by the State, but did not seek a jury admonishment or mistrial. At the end of the trial, the jury found Stettler guilty as charged. The trial court entered judgment of conviction against Stettler on May 26, 2016, and ordered a presentence investigation.

[11] On June 13, 2016, a sentencing hearing was conducted. At the conclusion of the hearing, the trial court sentenced Settler to fifteen years imprisonment.

[12] This appeal ensued.

# Discussion and Decision

## Prior Conduct toward Victim

[13] Stettler contends that the trial court's admission of testimony from S.Y. concerning Stettler's prior conduct toward her was impermissible under

Evidence Rule 404(b).[2] We review such decisions for an abuse of discretion, *Thompson v. State*, 960 N.E.2d 224, 233 (Ind. 1997), which occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *McClendon v. State*, 910 N.E.2d 826, 832 (Ind. Ct. App. 2009), *trans. denied*.

[14] Generally, evidence that is relevant—that is, evidence that has probative value as to an issue of fact in a case—is also admissible. Evid. R. 401 & 402. Evidence Rule 403 provides that where the probative value of the evidence is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence, otherwise relevant evidence may be excluded. Evidence Rule 404(b) further limits the admissibility of otherwise relevant evidence, and provides:

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

---

[2] Stettler also argues in his brief that laws related to the non-disclosure of juvenile delinquency records were violated through admission of Rule 404(b)-related evidence, and that the evidence could not be properly admitted for impeachment or sentencing purposes. Testimony concerning prior acts does not constitute the disclosure of records of juvenile proceedings; Stettler did not testify, thereby obviating any concern with impermissible impeachment; and the evidence was not admitted for purposes of sentencing. We accordingly do not address Stettler's arguments on those points.

absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

[15] "The well established rationale behind Evidence Rule 404(b) is that the jury is precluded from making the 'forbidden inference' that the defendant had a criminal propensity and therefore engaged in the charged conduct." *Thompson*, 690 N.E.2d at 233.

When the defendant objects on the ground that the admission of particular evidence would violate Rule 404(b), the following test should be applied: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

*Id.*

[16] If the "sole apparent purpose" of evidence of a prior wrongful act is "to show the defendant acted in conformity with that character," the evidence is inadmissible. *Pierce v. State*, 29 N.E.3d 1258, 1269 (Ind. 2015). "But such evidence may be admissible for 'other purposes,' provided it survives Rule 403 balancing." *Id.* (quoting *Halliburton v. State*, 1 N.E.3d 670, 681-82 (Ind. 2013)). "[I]t is sufficient that the evidence of … prior bad acts is relevant to a matter at

issue, other than…propensity." *Iqbal v. State*, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004), *trans. denied*.

[17] Here, the State sought to introduce S.Y.'s testimony concerning events that occurred with Stettler several years prior to the conduct charged. At the time of the charged offense, S.Y. was twelve years old. The State on direct examination solicited testimony from S.Y. concerning Stettler having repeatedly performed sexual acts on S.Y. from the time she was eight years old on the occasions when S.Y. and her family lived in the same home as Stettler and his family.

[18] When the State introduced this evidence, Stettler objected that S.Y.'s testimony was "highly inflammatory" and "does not prove any of the things allowed under 404B [sic] as a purpose for such testimony." (Tr. Vol. 2 at 73.) The State responded that S.Y.'s testimony "goes to plan, absence of fact [sic], and a motive that he committed the same type of behavior it's a plan and like a M.O. basically the time of night, how he would do it, that she was always asleep." (Tr. Vol. 2 at 72-73.) The trial court admitted the evidence over Stettler's objection.

[19] The State's argument for admissibility centered on "plan" as used in Rule 404(b). One branch of the "plan" exception is for acts that are part of a common scheme or plan, that is, evidence of acts that constitute an uninterrupted transaction, and of which the charged act is one. *Greenboam v. State*, 766 N.E.2d 1247, 1254-55 (Ind. Ct. App. 2002). This Court has

previously held that "'monthly molesting which continued for six years'" did not constitute an uninterrupted transaction within the contemplation of Rule 404(b). *Id.* at 1254 (quoting *Sloan v. State*, 654 N.E.2d 797, 799 (Ind. Ct. App. 1995), *abrogated on other grounds by Hicks v. State*, 690 N.E.2d 215, 220-221 (Ind. 1997)). Likewise, observing that "'an uninterrupted transaction requires that the crimes be committed in conjunction with each other,'" we have held that evidence of a defendant's prior act, eleven months apart from the charged offense and in a separate county, but committed in a similar way—by posing as a police officer, initiating a traffic stop, and committing rape—did not amount to a common scheme or plan. *Id.* at 1255 (quoting *Moore v. State*, 653 N.E.2d 1010, 1014 (Ind. Ct. App. 1995), *trans. denied*)).

[20] Here, the prior bad acts solicited through S.Y.'s testimony do not give evidence of an uninterrupted transaction. The prior acts elicited in S.Y.'s testimony were committed, in some cases, three years prior to the single act alleged in the instant case. There was no evidence that the prior acts were in any way committed in conjunction with the charged offense, and thus there was no basis upon which to conclude that the prior acts were evidence of a common scheme or plan.

[21] The second branch of the "plan" exception in Rule 404(b) relates to questions of identity and motive, and often involve an examination of the similarity of the prior bad acts to the charged offense, or to the relationship between the defendant and the victim as means for showing motive. *See Hicks v. State*, 690 N.E.2d 215, 221-22 (Ind. 1997). Evidence of prior acts may be probative in that

respect.  *Id.* (citing, inter alia, *Ross v. State*, 676 N.E.2d 339, 349 (Ind. 1996); *Price v. State*, 619 N.E.2d 582, 584 (Ind. 1993)) (holding as relevant in a murder case a history of domestic violence involving defendant and his victim).  Yet the State did not articulate how this would give evidence of either a plan or a specific motive, there was no dispute as to identity such that a more distinctive *modus operandi* was at issue, and there was no evidence of any particularly "unique" manner of committing the prior uncharged offenses.  *Lannan v. State*, 600 N.E.2d 1334, 1341 (Ind. 1992).

[22]    Further, we note that among the State's rationales for admission at trial was "absence of fact [sic]," which we take to mean absence of mistake.  Yet the questions of intent and mistake were not put at issue.  Intent and mistake often go hand-in-hand under Rule 404(b).  *See, e.g.*, *Goldsberry v. State*, 821 N.E.2d 447, 455-56 (Ind. Ct. App. 2005) (addressing intent and mistake with respect to motive and prior relationships between defendant and victim).  "[T]he intent exception is available only 'when a defendant goes beyond merely denying the charged culpability and affirmatively represents a claim of particular contrary intent.'"  *Goldsberry*, 821 N.E.2d at 455 (quoting *Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993)).

[23]    In his opening argument, Stettler attacked S.Y.'s credibility and argued that the evidence would show that he had not committed any offense against her; no argument was made as to intent.  And while there is no requirement that a defendant put into question the matter of mistake or motive, the State's opening argument and the testimony offered to that point in the trial did not suggest a

question concerning motive or mistake. *See Iqbal v. State*, 805 N.E.2d 401, 407-08 (Ind. Ct. App. 2004) (addressing the use of prior acts to support a claim of motive given a history of hostile interactions between two parties). There was no connection between the prior bad acts to which S.Y. testified and the question of mistake or accident. We accordingly conclude that S.Y.'s testimony as to prior bad acts allegedly committed by Stettler was inadmissible under Evidence Rule 404(b).

[24] That does not end the inquiry, however. Even when a trial court abuses its discretion in admitting evidence under Rule 404(b), "we will only reverse for that error if 'the error is inconsistent with substantial justice' or if 'a substantial right of the party is affected.'" *Iqbal*, 805 N.E.2d at 406 (quoting *Timberlake v. State*, 690 N.E.2d 243, 255 (Ind. 1997)); *also* Ind. Trial Rule 61. Even though S.Y.'s testimony concerning prior acts should not have been admitted, then, Stettler's conviction will stand if the erroneous admission of evidence did not affect his substantial rights.

[25] Our review of the evidence at trial discloses that S.Y. testified in detail about the events of the weekend of October 26, 2012. A portion of S.Y.'s account— Stettler's presence in the living room during the middle of the night in close proximity to S.Y., and Stettler approaching a sleeping S.Y.—was corroborated by C.Y.'s testimony. S.Y.'s testimony concerning Stettler's treatment of her, including buying her presents and giving her money for skating and other activities, was corroborated in Stettler's recorded interview with police. Muncie Police Department Detective Linda Cook testified that this conduct was

characteristic of "grooming" a victim. (Tr. Vol. 2 at 200.) And when asked in his interview with police what he would say to S.Y., Stettler responded that he would say, "I'm sorry." (Ex. 2.) In light of the foregoing, we conclude that any error in the trial court's admission of impermissible evidence concerning prior bad acts was harmless.

## Prosecutorial Misconduct

[26] We turn now to Stettler's second issue on appeal, whether the State engaged in prosecutorial misconduct during closing argument.

[27] The Indiana Supreme Court has set forth the legal standards under which we review a claim of prosecutorial misconduct:

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State,* 854 N.E.2d 831, 835 (Ind. 2006), *quoted in Castillo v. State,* 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Mahla v. State,* 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct." *Cooper,* 854 N.E.2d at 835 (emphasis added) (citations omitted). To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs— request an admonishment to the jury, and if further relief is

> desired, move for a mistrial.  *Id.; see also Maldonado v. State,* 265
> Ind. 492, 498, 355 N.E.2d 843, 848 (1976).

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014).

[28]    Here, Stettler did not request an admonishment to the jury or move for a mistrial, instead objecting only once to a statement during the State's closing arugment.  In such instances, appellate review of a claim of prosecutorial misconduct is waived for failure to preserve the claim of error.  *Id.*  When a defendant has waived review of a claim of prosecutorial misconduct for appellate review, he "must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error."  *Id.* at 667-68.  Fundamental error is an extremely narrow exception to the waiver rule, and exists only when the trial court's errors are so prejudicial that a fair trial was made impossible.  *Id.* at 668.

[29]    We address each of Stettler's contentions concerning the deputy prosecutor's closing arguments in turn.  Stettler's first contention is that the prosecutor impermissibly commented upon his decision not to testify.  The Fifth Amendment to the United States Constitution provides that a person shall not be compelled to testify against himself in a criminal proceeding.  *Cameron v. State*, 22 N.E.3d 588, 592 (Ind. Ct. App. 2014).  Moreover, "[t]he Fifth Amendment prohibits the prosecution from commenting on a defendant's decision not to testify."  *Id.*  This protection is violated when the prosecution "makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence."  *Thomas v.*

*State*, 9 N.E.3d 737, 742 (Ind. Ct. App. 2014). However, "a prosecutor's statement that simply sets out for the jury the procedure which the trial may follow is permissible provided it does not also imply to the jury that the defendant's silence at the trial evidences guilt." *DeBerry v. State*, 659 N.E.2d 665, 668 (Ind. Ct. App. 1995).

[30] During its closing argument, the State addressed the video recording of Stettler's interview with police. In that context, the State acknowledged a jury instruction that "the Defendant doesn't have to testify and we absolutely agree. He has that right." (Tr. Vol. 3 at 173.) Stettler objected and argued that it was entirely forbidden to mention that a defendant did not testify. The trial court observed that the State had done no more than recite a jury instruction and overruled the objection. Without further objection, the State's argument continued on to address Stettler's conduct in the video, suggesting that Stettler might have objected more strenuously during the police interview, and statements during *voir dire* concerning reasons witnesses might choose not to testify. None of this suggested that Stettler's decision not to testify implied his guilt, let alone rose to the level of fundamental error.

[31] Stettler also contends that the prosecution made statements that demeaned defense counsel. During the trial, the prosecution observed that the defense's strategy was to claim that S.Y. was lying, and argued that S.Y. was subjected to more vigorous questioning during cross-examination than the police had used upon Stettler during the recorded interview that had been played for the jury. Stettler contends that these arguments impermissibly demeaned defense counsel

and were statements to the jury that invited the jury to conclude that counsel was attempting to mislead the jury, and directs us to *Marcum v. State*, 725 N.E.2d 852 (Ind. 2002), in which the prosecution plainly stated that defense counsel sought to mislead a jury.

[32] Yet these arguments did not include statements that Stettler's counsel was trying to mislead the jury, and even acknowledged that defense counsel was entitled to observe in opening argument that police lied to Stettler. Stettler also contends that the prosecution impermissibly stated that defense counsel's opinion on whether S.Y. was lying "is not a situation that he should submit to you." (Tr. Vol. 3 at 159.) This contention ignores the broader context of the closing argument, in which the prosecutor also told the jury that her opinion on S.Y.'s truthfulness also "doesn't matter" and that opining whether S.Y. was telling the truth wasn't "my job." (Tr. Vol. 3 at 159.) The prosecutor did not impugn defense counsel or impermissibly suggest that defense counsel was trying to mislead the jury.

[33] Finally, Stettler contends that the prosecution attempted to vouch for S.Y.'s truthfulness by asking the jury to consider whether it appeared easy for S.Y. to testify. A prosecutor is not permitted to vouch for a witness's truthfulness. *Brummett v. State*, 10 N.E.3d 78, 86 (Ind. Ct. App. 2014), *reaffirmed on reh'g*, 21 N.E.2d 840, *affirmed*, 24 N.E.3d 965 (Ind. 2015). Yet the prosecution did not make the kinds of explicit statements concerning whether the jury should believe S.Y. that were at issue in *Brummett*, and our review of the record discloses that on numerous occasions S.Y. cried, and at least once suffered what

appeared to be a panic attack. **(Tr. Vol. 2 at 123.)** Thus, the prosecutor's statements concerning S.Y.'s difficulties testifying were at most restatements to the jury of what they had already seen during the trial. We accordingly conclude that there was no prosecutorial misconduct, and thus no fundamental error.

# Conclusion

[34] The trial court's admission of evidence barred by Evidence Rule 404(b) was harmless error. The prosecution did not engage in misconduct during closing arguments, and there was accordingly no fundamental error.

[35] Affirmed.

Najam, J., and May, J., concur.