## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 24 2017, 10:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Morley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 24, 2017 <br><br> Court of Appeals Case No. 87A01-1704-CR-954 <br><br> Appeal from the Warrick Circuit Court <br><br> The Honorable Greg A. Granger, Judge <br><br> Trial Court Cause No. 87C01-1503-F4-92 |

**Najam, Judge.**

## Statement of the Case

Michael Morley appeals his conviction for child molesting, as a Level 4 felony, following a jury trial. Morley presents a single issue for our review, which we restate as the following two issues:

> 1. Whether the trial court abused its discretion when it permitted testimony that he alleges violated Indiana Rule of Evidence 404(b).
>
> 2. Whether the trial court properly admonished the jury when it admitted that testimony.

We affirm.

## Facts and Procedural History

On October 12, 2014, Morley, his wife ("Amanda"), his daughter I.M., and Amanda's children J.C., L.I., G.C., and S.C. went to the home of Amanda's friend Sarah Meeks for a party, which included a sleepover. J.C.'s best friend, then-eleven-year-old C.B., joined them. Meeks' husband and two children, as well as two other adults, were also at the party. During the evening, the adults drank alcohol. In particular, Morley drank several beers and some moonshine.

At bedtime, C.B., J.C., S.C., L.I., and I.M., all girls, got into a fifteen-person tent to sleep for the night.[1] At some point after the girls got settled into their

---

[1] The male children attending the party slept inside the Meeks' house.

tent and had been sleeping, Morley went into the girls' tent. L.I. told Morley to leave the tent, and Morley told L.I. to "shush." Tr. Vol. 2 at 76. Morley then lay down on the floor of the tent with his head near C.B.'s head and his feet near S.C.'s head. L.I. heard some "rustling around." *Id.* at 77. C.B. awoke and found Morley with his hand inside her bra touching her breasts. Morley then put his hand inside C.B.'s underwear, touched her near her vagina, and moved his hand "like in circles." *Id.* at 56. C.B. got up, "got outta [sic] the tent and went inside" the Meeks' house. *Id.* C.B. went into a bathroom "and just sat there for a little bit." *Id.* C.B. then went outside and asked Meeks[2] whether she could sleep inside the house. Meeks told C.B. that she was fine with that, and she told C.B. where she could find a blanket inside.

[5] In the meantime, Morley had moved over to the other end of the tent where J.C. was sleeping, and he lay down behind her. Morley placed his hand near J.C.'s vagina, over her pajamas. After about a minute, J.C. pushed his hand away. Morley then got up and left the girls' tent.

[6] L.I. had noticed that C.B. was "frantic" when she had gotten up and left the tent, so L.I. went inside the house to see whether C.B. was alright. *Id.* at 77. L.I. found C.B. crying in the living room, and L.I. went back outside to get Meeks because L.I. "didn't know how to handle the situation." *Id.* at 78. When L.I. returned to the living room with Meeks, C.B. was still crying and

---

[2] Meeks was sitting by a campfire at the time.

told Meeks what had happened. Meeks then went back outside and told Amanda what had happened. No one called the police that night, and no one called C.B.'s mother. At some point thereafter, C.B. told her mother what Morley had done, and C.B.'s mother contacted law enforcement.

The State charged Morley with child molesting, as a Level 4 felony, for the touching of C.B. During the jury trial, over Morley's objection, J.C. testified that, while she was in the tent with C.B. the night of the party, Morley had touched J.C. near her vagina. The trial court admonished the jury that it could consider J.C.'s testimony only to prove "motive, or opportunity, something like that[,]" but not as evidence of Morley's general character. *Id.* at 130. The jury found Morley guilty as charged. The trial court entered judgment and sentence accordingly. This appeal ensued.

## Discussion and Decision

### *Issue One: Evidence Rule 404(b)*

Morley contends that the trial court abused its discretion when it permitted J.C. to testify that he had touched her near her vagina around the same that he allegedly had molested C.B. The trial court has "inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." *McManus v. State*, 814 N.E.2d 253, 264 (Ind. 2004) (internal quotation marks omitted). An abuse of discretion occurs when the trial court's judgment "is clearly against the logic and effect of the facts and circumstances

and the error affects a party's substantial rights." *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

[9]    Morley maintains that J.C.'s testimony violated Indiana Evidence Rule 404(b)(1), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Morley acknowledges that, under Rule 404(b)(2), evidence of other wrongs or criminal acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. But Morley asserts that none of those exceptions apply here. We disagree and hold that J.C.'s testimony was admissible under the "plan" exception.

[10]   In *Turner v. State*, 682 N.E.2d 491, 496 n.5 (Ind. 1997), our supreme court stated that

> [p]rior bad act evidence to prove a plan is only admissible in certain circumstances.
>
> > The prior offenses "must tend to establish a preconceived plan by which the charged crime was committed. The crimes must, therefore, be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and charged crime."
>
> *Hardin[ v. State]*, 611 N.E.2d [123,] 130[ (Ind. 1993)].

Here, at trial, Morley admitted to having gone into the girls' tent while they were sleeping, but he claimed that he did so merely to make sure that J.C. was not having a night terror, which she was known to experience on occasion. But J.C. testified that Morley touched her near her vagina, and that act, which took place in the same tent, immediately followed the molestation of C.B.,[3] and was of the same character as Morley's molestation of C.B., tended to establish a preconceived plan for committing the charged crime.[4] *See id.*; *c.f. Stettler v. State*, 70 N.E.3d 874, 880 (Ind. Ct. App. 2017) (holding evidence of prior bad acts did not fall under plan exception where there was no evidence that the prior acts were in any way committed in conjunction with the charged offense), *trans. denied*. The trial court did not abuse its discretion when it admitted J.C.'s testimony.[5]

### Issue Two: Admonishment

[12] Morley also contends that the trial court's admonishment to the jury "was too open-ended to effectively prevent the jury from making the forbidden inference

---

[3] L.I. testified that, as soon as Morley got up from his position near C.B., he went over to the area of the tent where J.C. was sleeping.

[4] The trial court found that, "because it[ was] the same night, same tent, . . . it's relevant . . . and . . . the relevancy outweighs whatever prejudicial value there is." Tr. Vol. 2 at 117.

[5] To the extent Morley appears to argue that the evidence was inadmissible under Evidence Rule 403, he does not support that contention with cogent argument. Rather, his argument in support of that contention goes to whether the alleged error was harmless. Because we hold that the trial court did not err, we need not address Morley's contention that "the error is not harmless." Appellant's Br. at 14.

or to prevent prejudice." Appellant's Br. at 16. Following J.C.'s testimony, the trial court admonished the jury as follows:

> Alright, let me, uh, at this point then, uh, admonish the jury. Uh, you may not use the testimony of this Witness, uh, concerning the actions that she described of Mr. Morley in touching her as evidence of his general character. You can only use it to . . . prove, uh, motive, uh, or opportunity, *something like that*, okay? *Just don't consider it for his general character*. Go ahead.

Tr. Vol. 2 at 130 (emphases added). Morley maintains that, "by using the phrase 'something like that[,]' the court has left the jury, untrained in the law, to fill in the law for themselves." Appellant's Br. at 16.

[13] But Morley did not object to the admonishment or otherwise ask the trial court to clarify it. As our Supreme Court has stated, "[n]othing is preserved on appeal where a defendant fails to object to a limiting instruction." *Stahl v. State*, 616 N.E.2d 9, 13, (Ind. 1993). Morley has waived this issue for our review.

[14] Affirmed.

Kirsch, J., and Brown, J., concur.