## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 27 2017, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William J. Cohen
Cohen Law Offices
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brent N. Draime, *Appellant-Defendant,* | December 27, 2017 |
| v. | Court of Appeals Case No. 20A03-1704-CR-870 |
| | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Teresa L. Cataldo, Judge |
| | Trial Court Cause No. 20D03-1501-FA-5 |

**Najam, Judge.**

# Statement of the Case

Brent N. Draime appeals his convictions, following a jury trial, and his sentence for three counts of child molesting, each as a Class A felony, and two counts of attempted child molesting, each as a Class A felony. Draime raises six issues for our review, which we restate as the following four issues:

1. Whether the trial court abused its discretion under Indiana Evidence Rule 404(b) when it permitted the victim to testify about certain photographs and the number of times that Draime had forced her to perform oral sex on him.

2. Whether the trial court committed fundamental error when it permitted a video statement made by the victim ten years prior to the charges to be played to the jury.

3. Whether the State presented sufficient evidence to support Draime's convictions.

4. Whether Draime's 120-year sentence is inappropriate.

We affirm.

# Facts and Procedural History

Around 1993, when N.P. was four years old, her mother began dating Draime. A few years later, N.P. and her family moved into an apartment with Draime. N.P. considered Draime "a father figure." Tr. Vol. II at 236.

[4] Between 1996 and 2003, Draime repeatedly molested N.P. On some occasions, he performed oral sex on her. On others, he had her perform oral sex on him. On still other occasions, he would have her manually stimulate him.

[5] During those years, Draime showed N.P. photographs of naked women, including a photograph of N.P.'s mother masturbating. Draime also showed N.P. photographs of women performing oral sex. And Draime showed N.P. sexually explicit videos, including a video of Draime and N.P.'s mother engaging in sexual activity. On at least one occasion, Draime took several photographs of N.P. while her vagina was exposed.

[6] During N.P.'s early teenage years, while at a local festival, N.P. wanted to get "Henna art on [her] hand." Tr. Vol. III at 22. On another occasion during those years, N.P. wanted to get her belly button pierced. On both occasions, Draime told N.P. she would have "to do something for him" in exchange. *Id.* N.P. understood Draime to be "bartering for [sexual] acts," which she declined to do both times. *Id.*

[7] In 2004, a neighbor observed N.P. smoking marijuana and confronted N.P. During that conversation, N.P. reported Draime's acts to the neighbor, and the neighbor, in turn, contacted the Child and Family Advocacy Center ("CFAC"). N.P. then gave a video-recorded statement to a CFAC investigator in which she described Draime's actions. However, following N.P.'s recorded statement, the investigator immediately suspended the case rather than conducting any further investigation.

[8] About a decade later, N.P., an adult, contacted local police to find out what had happened with the 2004 investigation. Detective Jeremy Stout with the Elkhart County Sheriff's Department received N.P.'s request, obtained her 2004 CFAC video-recorded statement, and interviewed N.P. N.P. told Detective Stout of Draime's actions, and her descriptions were consistent with her 2004 statement.[1] Accordingly, Detective Stout reopened the investigation into Draime.

[9] Thereafter, Detective Stout interviewed Draime. Detective Stout observed that, during the interview, Draime was "nervous and stressed." Tr. Vol. IV. at 163. Draime denied N.P.'s allegations generally but provided statements that corroborated portions of N.P.'s statements. For example, Draime confirmed that he had Polaroid photographs of nude women in his toolbox, and he confirmed that he shaved his pubic region.

[10] On February 17, 2017, the State filed an amended information against Draime in which the State alleged that Draime had committed three Class A felony acts of child molesting and two Class A felony acts of attempted child molesting. Each of the State's five charges alleged an act "between[] 1996[] and December 24, 2003," in Elkhart County between Draime and N.P., and each charge recited the relevant statutory language, but the charges were otherwise not factually specific. Appellant's App. Vol. II at 127-28.

---

[1] Detective Stout stated that he was, "putting it lightly, very frustrated" by the 2004 decision to suspend the investigation following N.P.'s recorded statement. Tr. Vol. IV at 149. He also stated that the 2004 decision to suspend the investigation would "not happen" under current practices. *Id.*

[11] N.P. testified at Draime's ensuing jury trial. During her testimony, the State asked N.P., over Draime's objections, to describe the different photographs and videos Draime had allegedly shown her or taken of her. The State also asked N.P., again, over Draime's objections, "how many times specifically from the time you were in first grade [in 1996] through Christmastime of 2003 that you had to perform . . . oral sex on the defendant?" Tr. Vol. III at 52. N.P. responded, "[t]wenty or more." *Id.* at 55.

[12] In his cross-examination of N.P., Draime repeatedly attacked her recollection of the molestations. He also questioned whether N.P. "just ma[d]e these things up" in 2004 after her neighbor had caught her smoking marijuana. *Id.* at 139-44. In response to Draime's cross-examination, the State requested that the 2004 CFAC video recording and N.P.'s 2014 interview with Detective Stout be admitted into the record. The trial court granted the State's request over Draime's objections.

[13] The jury found Draime guilty as charged. The trial court entered its judgment of conviction against Draime and ordered him to serve an executed term of 120 years. In reaching that sentence, the court identified the following aggravating circumstances, which were in accordance with a stipulation between Draime and the State:

> defendant has [a] prior operating while intoxicated case; victim was less than 12 years of age at the time of the offense . . . ; . . . the victim was 6 years old and in first grade and ended [sic] when victim was 13 years old and in eighth grade; for seven years conduct was continued intermittently . . . ; defendant

was in a position of having care and control of the victim as the defendant was viewed as the father figure in this household[, and] defendant was looked to [to] fulfill that role.

Appellant's App. Vol. II at 30. The court found as a mitigating circumstance Draime's service in the United States military and his honorable discharge from that service. This appeal ensued.

# Discussion and Decision

### Issue One: Admission of N.P.'s Testimony Regarding the Photographs and the Number of Molestations

[14] On appeal, Draime first contends that the trial court abused its discretion when it permitted N.P. to testify, over Draime's objections, about the photographs and the number of times that Draime had made N.P. perform oral sex on him. As our Supreme Court has explained:

> Generally, a trial court's ruling on the admission of evidence is accorded a great deal of deference on appeal. Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and only reverse if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015) (citations and quotation marks omitted).

[15] Here, Draime objected in the trial court to the challenged evidence on two grounds. First, he argued that the evidence was prohibited under Indiana

Evidence Rule 404(b), which generally prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Second, he argued that any probative value of the evidence was "substantially outweighed by a danger of . . . unfair prejudice," and, as such, the evidence should have been excluded under Indiana Evidence Rule 403. However, on appeal Draime limits his arguments to only Rule 404(b). *See* Appellant's Br. at 10-15.[2]

[16] The trial court did not abuse its discretion under Rule 404(b) when it permitted N.P.'s testimony regarding the photographs. By its plain terms, evidence of prior acts is permitted under Rule 404(b) when that evidence is offered "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Here, N.P.'s testimony regarding the photographs was not admitted to show Draime's propensity to commit sex offenses; rather, her testimony was admitted to show that Draime had prepared N.P. to be more comfortable with engaging him in sexual acts. *See, e.g.*, *Guffey v. State*, 42 N.E.3d 152, 160-61 (Ind. Ct. App. 2015) ("We have previously held that a defendant's planning and grooming were relevant and established a valid basis for the admission of prior acts under Rule 404(b)."), *trans. denied*.

---

[2] Although Draime references Rule 403 in his brief, he does not present argument supported by cogent reasoning on appeal under that Rule, and it is not this Court's place to make that argument on his behalf. *See* Ind. Appellate Rule 46(A)(8)(a).

[17] Still, Draime argues that the admission of N.P.'s testimony was contrary to our Supreme Court's holding in *Buchanan v. State*, 767 N.E.2d 967, 970 (Ind. 2002). In *Buchanan*, the trial court permitted the State to introduce evidence that the defendant had drawn pictures of "naked little girls." *Id.* The trial court also permitted the State to introduce evidence that the defendant owned a pornographic magazine titled "Little Girls," which was legal pornography. *See Buchanan v. State*, 742 N.E.2d 1018, 1022 (Ind. Ct. App. 2001), *rev'd*, 767 N.E.2d at 970. Our Supreme Court agreed with our Court that the admission of that evidence was erroneous because "[n]one of the drawings or photographs showed physical contact between an adult male and a female child" and "the drawings and photographs . . . [we]re not tied to [the defendant's] relationship with the victim or to any other facts of [the defendant's] crime." *Id.*, *rev'd*, 767 N.E.2d at 970. Nonetheless, our Supreme Court held that the erroneous admission of that evidence was harmless. 767 N.E.2d at 970.

[18] *Buchanan* is inapposite. Unlike in that case, here Draime presented the materials to his victim; some of those materials showed sexual acts that Draime had demanded of N.P.; some of those materials showed N.P.'s mother engaged in sexual activity; and some of the materials involved N.P. herself. In other words, N.P.'s testimony regarding the photographs was tied to Draime's relationship with her and to his crimes against her. Accordingly, Rule 404(b) did not prohibit N.P.'s testimony regarding the photographs.

[19] Draime also asserts that the trial court abused its discretion under Rule 404(b) when it permitted N.P. to testify that Draime had forced her to perform oral sex

on him at least twenty times.[3] In support of his argument on this issue, Draime relies on this Court's opinion in *Stettler v. State*, 70 N.E.3d 874, 880 (Ind. Ct. App. 2017), *trans. denied*. In *Stettler*, the trial court admitted into evidence "events that occurred [between the victim and the defendant] several years prior to the conduct charged." *Id.* We held that the trial court abused its discretion under Rule 404(b) in the admission of that evidence. *Id.* at 880-81.

[20]     *Stettler* does not apply here, however, where the victim's testimony regarding the number of times she had been molested was within the timeframe of each of the State's multiple charges against Draime. Such testimony does not describe prohibited acts under Rule 404(b) but, rather, is "evidence . . . intrinsic to the charge[s] . . . and therefore outside" Rule 404(b). *Marshall v. State*, 893 N.E.2d 1170, 1175 (Ind. Ct. App. 2008). Moreover, the State did not specify in its charging information particular and distinct facts in support of each charge, and Draime in turn did not rely on any such stated facts in the preparation of his defense. *Cf. Young v. State*, 30 N.E.3d 719, 726-28 (Ind. 2015) (holding that it is fundamental error to convict a defendant based on facts that are different from facts stated in the charging information when the defendant has relied on the language of the information in the preparation of his defense). Rather, the State merely alleged that, within a span of about eight years, Draime had committed or attempted to commit five Class A felony acts of child molesting. N.P.'s

---

[3] Draime's final paragraph in his brief on this issue, which spans pages 14 and 15 of his brief, is unclear. As we will not make an argument on behalf of a party, we do not interpret that paragraph to raise a different argument on appeal than the argument we address.

testimony that he committed more than that number in that timeframe was intrinsic to the State's charges. Accordingly, the trial court did not abuse its discretion under Rule 404(b) when it permitted N.P. to testify about the number of times Draime had forced her to perform oral sex on him.

### Issue Two: Admission of the CFAC Video

[21] Draime next asserts that the trial court erred when it permitted the State to play the CFAC video to the jury. As the grounds Draime raises on appeal against the admission of the CFAC video are different than the grounds on which he objected in the trial court,[4] on appeal Draime must show that the trial court committed fundamental error in admission of the video. *See Stephenson v. State*, 29 N.E.3d 111, 118, 121 (Ind. 2015).[5] Fundamental error is error that makes "a fair trial impossible" and "is available only in egregious circumstances." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quotation marks omitted). On appeal, Draime asserts that the trial court committed fundamental error when it admitted the CFAC video because "[t]he State did not follow the admission procedure set out in Ind. Code § 35-37-4-6," which describes the admissibility of video statements made by protected persons. Appellant's Br. at 16.

---

[4] The only objection to the CFAC video Draime maintained in the trial court was that the video should not be admitted because, at the time it was made, N.P. was not subject to cross-examination. Tr. Vol. III at 168. Despite his assertions on appeal, in the trial court Draime withdrew his objection that he "was never given the CFAC video with an opportunity to review it." *Id.* at 167-68.

[5] We note that our Supreme Court has held that fundamental error is not available on appeal when the defendant stated in the trial court that he had "no objection" to the admission of evidence. *Halliburton v. State*, 1 N.E.3d 670, 677 (Ind. 2013). However, in *Stephenson* our Supreme Court stated that fundamental error is available on appeal when the defendant objects to the admission of evidence on one ground in the trial court but proffers a different rationale on appeal. 29 N.E.3d at 121.

[22]  Indiana Code Section 35-37-4-6 (2017) plainly did not apply to the CFAC video. Section 35-37-4-6 applies to recorded statements of protected persons. As relevant here, a protected person is "a child who is less than fourteen (14) years of age . . . at the time of trial." I.C. § 35-47-4-6(c)(1), (d)(1). At the time of Draime's trial, N.P. was not a child, let alone a child under fourteen years of age.[6] Accordingly, no error, and no fundamental error, occurred in the admission of the CFAC video under Indiana Code Section 35-37-4-6.

### Issue Three:  Sufficiency of the Evidence

[23]  Draime next asserts that the State failed to present sufficient evidence to support his convictions. Our standard of review is clear: in reviewing such claims, we will consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom. *Leonard v. State*, 73 N.E.3d 155, 160 (Ind. 2017). We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We will neither reweigh the evidence nor reassess the credibility of witnesses. *Id.*

[24]  Draime's first argument on this issue is that N.P.'s testimony was incredibly dubious. As our Supreme Court has explained:

---

[6] In his brief, Draime also requests that, "[i]n the event this Court reverses and remands for a new trial," we "rule upon a discovery issue involving the CFAC video." Appellant's Br. at 17. As we are neither reversing nor remanding, we do not consider Draime's purported "discovery issue."

> The incredible dubiosity rule allows the Court to impinge upon a jury's responsibility to judge the credibility of the witnesses only when confronted with inherently improbable testimony. The incredible dubiosity rule is only applied in limited circumstances.
>
> * * *
>
> . . . the appropriate scope of the incredible dubiosity rule as utilized in Indiana and other jurisdictions requires that there be: 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence.

*Moore v. State*, 27 N.E.3d 749, 754, 756 (Ind. 2015) (citation and quotation marks omitted). Even when there is a sole testifying witness, the incredible dubiosity rule may not apply. *Id.* at 755. To apply, the witness' testimony "must be so convoluted and/or contrary to human experience that no reasonable person could believe it." *Id.* at 756 (citation and quotation marks omitted).

[25] The incredible dubiosity rule does not apply here for at least two reasons. First, N.P. was not a sole testifying witness. While she was the only testifying eyewitness to the molestations, various other witnesses testified and those witnesses corroborated other parts of N.P.'s testimony. For example, N.P.'s mother testified that she and Draime had made a video of them engaging in sexual activity. N.P.'s mother also corroborated N.P.'s testimony that Draime was not circumcised and that he often shaved his pubic region. Similarly, Detective Stout testified that he had interviewed Draime, that Draime had

similarly corroborated key aspects of N.P.'s allegations, and that, during the interview, Draime was nervous. Second, Draime's assertions aside, nothing about N.P.'s testimony by itself was "so convoluted" or "contrary to human experience that no reasonable person could believe it." *Id.* (citation and quotation marks omitted). Draime's argument on appeal is, in essence, merely a request for this Court to reweigh the evidence and reassess N.P.'s credibility, which we will not do.

[26] Draime also asserts that the State failed to present sufficient evidence to support either of the two attempt charges. In particular, Draime states that, when N.P. "declined the proposals" Draime had made following her request for Henna art and to get her belly button pierced, "there was no attempt as a matter of law based upon the test set out in" *Ward v. State*, 528 N.E.2d 52, 53-54 (Ind. 1988). Appellant's Br. at 21. But in *Ward* our Supreme Court held that the State presented sufficient evidence that the defendant had attempted to molest one of his victims when the evidence showed that the defendant had followed his eleven-year-old victim—whom the defendant had never before met— approached the victim, and thrice requested the victim to engage in oral sex. *Ward*, 528 N.E.2d at 55. In light of those facts, our Supreme Court held that the defendant's demands were "substantially in the nature of persuasion" and therefore an attempt. *Id.*

[27] The instant facts are even more compelling than those in *Ward*. Draime lived with N.P., he had a father-like position over her, and his demands, which she declined, were made against a background of prior molestations. We conclude

that, although N.P. declined Draime's demands, his demands were "substantially in the nature of persuasion" and therefore attempts on these facts. *Id.* Further, we reject the implication in Draime's argument that N.P. had to accept Draime's solicitations for those solicitations to become crimes. Accordingly, we affirm Draime's convictions.

### *Issue Four: Sentencing*

[28] Last, Draime challenges his 120-year sentence. We begin our review of this issue by noting that Draime repeatedly refers to his sentence as "unreasonable" or "manifestly unreasonable."[7] Appellant's Br. at 22-23. We remind Draime that we have not reviewed sentences under the manifestly-unreasonable standard for more than fourteen years. Since January 1, 2003, Indiana Appellate Rule 7(B) has permitted the appellate revision of sentences only when "the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[29] Substantively, Draime's entire argument against his 120-year sentence is as follows: "such a sentence for a 64 year old man whose only criminal history consists of a Class C misdemeanor . . . is manifestly unreasonable. One hundred twenty (120) years is a sentence that is greater than life for the

---

[7] Draime also states that "the trial court abused its discretion" when it sentenced him. Appellant's Br. at 22. But Draime does not support that argument with cogent reasoning, and it is waived. App. R. 46(A)(8)(a). Moreover, insofar as Draime complains that the trial court used his criminal history as an aggravating circumstance, the trial court's identification of aggravators was pursuant to a stipulation between Draime and the State. Thus, any error in the court's identification of aggravators was invited by Draime. *See Baugh v. State*, 933 N.E.2d 1277, 1280 (Ind. 2010).

defendant." Appellant's Br. at 23. We interpret Draime's argument to be that his sentence is inappropriate in light of his character. However, that argument, by itself, is not sufficient to invoke this Court's authority to revise a sentence under Rule 7(B). Rather, to invoke this Court's authority under Rule 7(B), the appellant must persuade this Court that his sentence is inappropriate in light of *both* the nature of the offenses *and* the appellant's character. *Sanders v. State*, 71 N.E.3d 839, 843-44 (Ind. Ct. App. 2017), *trans. denied*. Draime's argument on appeal does not address his sentence in relation to the nature of his offenses. As such, he has waived our review of his sentence under Rule 7(B). *Id.* His waiver notwithstanding, Draime repeatedly molested N.P. over seven years while in a position of trust over her. As such, we cannot say that his sentence is inappropriate in light of the nature of the offenses and his character, and we affirm his sentence.

## *Conclusion*

[30] In sum, the trial court did not abuse its discretion in the admission of N.P.'s testimony regarding the photographs and the number of times Draime forced her to perform oral sex on him; the trial court did not commit fundamental error in the admission of the CFAC video; the State presented sufficient evidence to support Draime's convictions; and Draime's 120-year sentence is not inappropriate. Thus, we affirm his convictions and sentence.

[31] Affirmed.

Mathias, J., and Barnes, J., concur.