## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2018, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Litale Zavier Kendall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 30, 2018

Court of Appeals Case No.
49A02-1708-CR-1717

Appeal from the Marion Superior Court

The Honorable Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-1609-F5-37922

**Pyle, Judge.**

# Statement of the Case

[1] Litale Zavier Kendall ("Kendall") appeals his convictions for Level 5 felony battery by means of a deadly weapon,[1] Level 6 felony criminal recklessness,[2] and Class A misdemeanor domestic battery.[3] He argues that the trial court abused its discretion and violated Indiana Evidence Rule 404(b) when it admitted evidence regarding a prior bad act, i.e., a witness's testimony alluding to Kendall's prior physical acts against the victim. Even assuming that the admission of the evidence was erroneous, we affirm Kendall's convictions because we conclude that any error was harmless in light of the independent evidence of his guilt.

[2] We affirm.

# Issue

Whether the trial court's admission of evidence was harmless error.

# Facts

[3] In mid-August 2016, Kendall and his girlfriend, Tracy Washington ("Washington"), ended their more than one-year relationship. Thereafter, Washington began dating Dewayne Fletcher ("Fletcher"). After Kendall and

---

[1] IND. CODE § 35-42-2-1.

[2] I.C. § 35-42-2-2.

[3] I.C. § 35-42-2-1.3.

Washington broke up, Kendall did not know where Washington was staying and tried to find her. At that time, Washington was staying with Fletcher and his family, including his mother ("Fletcher's mother") and sister ("Fletcher's sister").

[4] In the early morning hours of August 28, 2016, Kendall showed up unexpectedly at Fletcher's house. Washington, who was upstairs when Kendall arrived, heard Kendall saying negative things about her to Fletcher. Kendall told Fletcher that Washington was "a whore, that [she] was nasty, [and] that [she] would sleep with anybody." (Tr. Vol. 2 at 18). Washington went downstairs and told Kendall to leave. Kendall told her to "shut up[,]" raised his fist, and "flinched" at or moved towards her. (Tr. Vol. 2 at 18, 19). Washington "went into defense mode[,]" pulled a knife out of her bra, and told Kendall to "get back." (Tr. Vol. 2 at 20). When Kendall "flinched" at Washington again, Fletcher separated them. (Tr. Vol. 2 at 20). Washington then went back upstairs, and she heard Kendall saying, "That's my girl. I have her name tattooed on my arm. She has my name tattooed on her leg. I love her." (Tr. Vol. 2 at 21).

[5] When Fletcher's mother and sister came home, they went into the room with Kendall. He told them not to trust Washington, said that she was a whore and would get Fletcher killed, and tried to convince them to throw Washington out of the house. Fletcher's mother went upstairs to get Washington and saw that Washington was crying and "was scared out of her mind." (Tr. Vol. 2 at 105).

Washington eventually went downstairs, where Kendall continued to say negative things about her. Fletcher's sister told Washington to leave the house.

[6] Washington walked onto the front porch, where Fletcher sat next to her. Kendall stayed inside and talked to Fletcher's mother and sister for a little while. Kendall then went outside on the porch, and Fletcher's mother stood in the doorway looking out on the porch. Washington stood up and said she was going to leave. Kendall then told Washington to "shut up" and "hauled off and smacked" her face. (Tr. Vol. 2 at 30). Washington, who fell to the ground, pulled a knife out of her bra and said, "I'm done. I'm tired. . . [Y]ou, are not about to keep doing this to me." (Tr. Vol. 2 at 31). Kendall then pulled out his gun, pointed it at Washington's head, and demanded that she give him the knife. He also said, "Bitch, I'll kill you." (Tr. Vol. 2 at 118). Washington then told Kendall, "If you're going to shoot me, then shoot me." (Tr. Vol. 2 at 31). Kendall took the knife from Washington, and Fletcher stepped in and grabbed Kendall. Kendall then reached around Fletcher and stabbed Washington in her right shoulder. Washington screamed that Kendall had stabbed her, and Kendall ran away. Fletcher's mother and sister put a towel and peroxide on Washington's shoulder to stop the bleeding, and Washington fell asleep. After Washington woke up, she went to the hospital and reported the incident to the police.

[7] The State ultimately charged Kendall with: Count 1, Level 5 felony battery by means of a deadly weapon (knife); Count 2, Level 6 felony criminal recklessness (pointing a gun at Washington); Count 3, Class A misdemeanor

domestic battery; and Count 4, Class A misdemeanor battery resulting in bodily injury.[4]

[8] The trial court held a jury trial on June 21, 2017. On the morning of trial, the State filed a notice of intent to offer Rule 404(b) evidence at trial to show, among other things, motive and the nature of the relationship between Kendall and Washington. Specifically, the State sought to introduce evidence that "for the weeks leading up to this incident, Defendant Kendall was trying to determine the whereabouts of Trac[]y Washington because he did not want her to leave him and/or the relationship." (App. Vol. 2 at 61). Before the trial commenced, the parties discussed the notice with the judge. Kendall's counsel objected, based on prejudice and lack of relevancy, to the admission of any testimony regarding that act. The State responded that it went to Kendall's "motive" and that the victim would testify that Kendall "had been trying to find her . . . on several occasions." (Tr. Vol. 2 at 7). The trial court ruled that the evidence would be admissible but left the issue open depending on what would transpire during the trial.

[9] During the trial, the State called Washington, Fletcher's sister, and Fletcher's mother among other witnesses. Washington testified to the facts above. When Fletcher's sister and mother testified, they both made a reference to Kendall beating Washington. Fletcher's sister testified that when she and Fletcher's

---

[4] Initially, the State also charged with Level 6 felony intimidation and Class A misdemeanor pointing a firearm at another person but later dismissed these charges.

mother were in the house with Kendall, they talked to him about why he wanted Washington back. The State asked Fletcher's sister about the conversation, and she responded, "That he wanted her back[,] and we was asking why. He was like cause I got her name tattooed on him and -- And we was like, well, she doesn't want to go back to you because you always beat her and all that type of stuff." (Tr. Vol. 2 at 92-93) (improper grammar unchanged). Kendall objected, and the following conversation occurred between the parties and the trial court at the bench:

> [KENDALL'S COUNSEL]: Judge, the State is getting into, it seems to be (indiscernible) accusations that are not related to this case. I don't know if this witness is going to continue down that path, but it seems like they are going into history.

> THE COURT: Well, I haven't heard anything necessarily that is. But obviously the State needs to tread carefully and you need to be ready with objections. But right now I haven't heard anything objectionable.

> [KENDALL'S COUNSEL]: I think she just testified that he is always beating her.

> [THE STATE]: That's not what she testified to. She testified to what the Defendant was saying and she was (indiscernible). She's asking him (indiscernible).

> [KENDALL'S COUNSEL]: But she said it in her response (indiscernible). I'm objecting to that it is highly prejudicial and is not (indiscernible) to this cause.

> [THE STATE]: (indiscernible)

> THE COURT: I'm going to overrule the objection. But we will tread carefully.

[THE STATE]: Yes, Judge.

THE COURT: And be ready for additional objections. Okay.

[KENDALL'S COUNSEL]: Thank you, Judge.

THE COURT: Thank you.

(Tr. Vol. 2 at 93-94).

[10] When Fletcher's mother testified, she also talked about how Kendall had stated that he wanted Washington back because he had her name tattooed on him, and she made a reference to Kendall beating Washington. (Tr. Vol. 2 at 108). Specifically, she stated, "When he kept telling me the same old story, how he loved her and all this[,] I said, he just wants her money. And I said, 'You just want to keep doing, beating on her like you been doing." (Tr. Vol. 2 at 108). Kendall objected, and the trial court sustained the objection, struck the testimony, and instructed the jury not to consider it.

[11] Fletcher's mother also provided testimony that corroborated Washington's testimony regarding Kendall's acts of hitting, pointing a gun at, and stabbing Washington. More specifically, Fletcher's mother testified that she was standing in the doorway when she heard Kendall slap Washington on the face.[5] Additionally, she testified that she saw Kendall pull out a gun and point it Washington's head and that she heard him say, "Bitch, I'll kill you." (Tr. Vol.

---

[5] Fletcher's mother testified that she did not see the slap because she had turned her head to talk to neighbors who were on their own porch.

2 at 118). Fletcher's mother also testified that she saw Fletcher intervene and push Kendall away from Washington and that she saw Kendall pull out a "silver object." (Tr. Vol. 2 at 115). Lastly, Fletcher's mother testified that she saw Kendall behind Washington and that she then saw "blood all over" Washington and a "real bloody hole" on Washington's shoulder. (Tr. Vol. 2 at 122, 124).

[12] The jury found Kendall guilty as charged. The trial court imposed a three (3) year sentence for Kendall's Level 5 felony battery conviction, a one (1) year sentence for his Level 6 felony criminal recklessness conviction, and one (1) year sentence for his Class A misdemeanor domestic battery conviction, and it ordered these sentences to be served concurrently. The trial court did not enter judgment of conviction on Kendall's Class A misdemeanor battery conviction. Kendall now appeals.

# Decision

[13] Kendall argues that the trial court abused its discretion by admitting Fletcher's sister's testimony suggesting that Kendall had previously beaten Washington. Specifically, he contends that this evidence was inadmissible under Indiana Evidence Rule 404(b) because it was a prior bad act and under Evidence Rule 403 because it was unfairly prejudicial.

[14] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of

discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[15] Indiana Evidence Rule 404(b) provides as follows:

> (b) Crimes, Wrongs, or Other Acts.
>
> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
> > (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> >
> > (B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

Ind. R. Evid. 404. Evidence Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[16] While the parties have presented specific arguments regarding whether or not there was any error in the admission of Fletcher's sister's testimony, we need

not address these arguments. Assuming without deciding that the trial court abused its discretion by admitting the evidence, the error was harmless.[6] "Even when a trial court abuses its discretion in admitting evidence under Rule 404(b), we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected. *Stettler v. State*, 70 N.E.3d 874, 881 (Ind. Ct. App. 2017) (internal quotation marks and citations omitted), *trans. denied*. "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000), *reh'g denied*. *See also Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014) ("If we are satisfied the conviction is supported by independent evidence of guilt such that there is little likelihood the challenged evidence contributed to the verdict, the error is harmless.").

[17] Here, there was substantial independent evidence that Kendall smacked Washington in the face, pointed a gun at her, and stabbed her with a knife. Washington testified about Kendall's acts against her, and her testimony was corroborated by Fletcher's mother's testimony, who heard and/or saw Kendall commit some of these acts as well as his actions leading up to them and

---

[6] We note, however, that "where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime." *Iqbal v. State*, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004).

Washington's resulting injury. Furthermore, Washington's testimony regarding the stabbing was corroborated by evidence showing her physical injury. Based on our review of the record and the evidence supporting Kendall's convictions, we are satisfied that there is no substantial likelihood that the challenged evidence contributed to the jury's verdicts and, therefore, conclude that the admission of the evidence was harmless error. *See, e.g.*, *Cook*, 734 N.E.2d at 569 (holding that the erroneous admission of Rule 404(b) evidence was harmless error); *Stettler*, 70 N.E.3d at 881 (holding that the trial court's erroneous admission of evidence concerning prior bad acts was harmless error).

[18] Affirmed.

Kirsch, J., and Bailey, J., concur.